*98
 
 PeaesoN, C. J.
 

 A court of Equity has no jurisdiction in respect to
 
 ¿oris,
 
 except under peculiar circumstances, where its interference is necessary, in order to prevent “ irreparable injury.”
 

 To justify the assumption of jurisdiction, it is not sufficient, as in matters of contract, that the remedy, at law, is inadequate. Nor is it sufficient that the -wrong appended will, if not prevented, subject the party to “inconvenience and great expense, and put him to much trouble,” for this would open too large a field and leave butlittlefor the common law courts. The wrong apprehended must be of such a nature as will cause irreparable injury in the proper sense of the word “ irreparable,” for that is the foundation of the jurisdiction, and the chancellor interferes, not because there is any equitable ingredient involved in the case, but to prevent a tort, the consequences of which could not be compensated for ; for example, to prevent
 
 destructive
 
 waste, as cutting down ornamental or shade trees ; or, to stay ordinai-y waste in cutting timber, &c., where the party is unable to pay for it; to prevent a nuisance or the invasion of a copy right; and to prevent an article of personal property where it has a peculiar value, as an ancient silver altar, or a picture by some celebrated artist, from being destroyed or defaced, pending a suit concerning if, where there is reason to apprehend that the defendant will mash the altar or tear the pficture or smear it with a brnshjj Adams’ Eq. 92. These cases, in respect to personal property, are reported in the English books, but it is remarkable how . very few cases of the kind are to be met with in their reports; showing the extreme caution with which the jurisdiction is exercised. In our reports there are many cases respecting slaves, where writs of injunction and sequestration have been granted at the instance of a remainder-man against a tenant for life; or of those entitled to the ulterior estate, against one having a-determinable fee, to pire vent the slaves from being carried to “parts unknown,” which is considered in effect a "destruction of the property. This jurisdiction, like that to prevent waste, is freely exercised where facts are stated to
 
 *99
 
 show a well grounded apprehension that the slaves will be taken off; and, in most of the cases, there is an allegation of the insolvency of the defendant; .that, however, we apprehend, is not necessary; for, in those eases, and those to prevent waste, there is a “privity of estate” which creates a confidential relation, and makes the way easy for the interference ■of a court of Equity. But the cases in our books are very rare where the court has interfered in order to prevent a
 
 naked trespass,
 
 and the irreparable injury which would result should the wrong-doer carry the slave to “parts unknown.” There ■can be no doubt, however, in respect to the jurisdiction ; for the injury would be irreparable, and the removal of the slave to parts unknown, would be, in effect, a -destruction.. We •should, without hesitation, sustain an injunction or séquestra-tien granted in aid of an action at law, either pending, or •about to be commenced for a naked trespass, if necessary to preserve the property and prevent it from being taken out of the country. Tiie counsel for the.plaintiffs were only able to find in our reports, three cases in which they conceive the jurisdiction has been exercised;
 
 Edwards
 
 v.
 
 Massey,
 
 1 Hawks’ 364, is in point. An action of detinue was pending for a •slave. The defendant was a mere wrong-doer, and the aid of the Court is asked on the ground that he was insolvent, and intended to run the slave beyond the limits of the State; the •injunction and sequestration were sustained.
 
 Miller
 
 v.
 
 Washburn,
 
 3 Ired. 161, is not in point. An ¿ration at law, by the administrator, was pending, and the bill has an allegation that the defendants were men in slender circumstances, and intended to remove the slaves out the State., But there was privity between the parties, and the Court treats tire bill as one for •specific performance “ to enforce an agreement to compromise a family dispute.”
 
 McNeely
 
 v.
 
 McNeely,
 
 Busb. Eq. 240. is not in point. The object was to prevent a trustee from selling the property after the trusts of the deed \y@iA3Sti$|ied, and for a reconveyance. So,
 
 Edwards
 
 v. Massey, is the only case in which oiu trespass.
 

 
 *100
 
 On the side of the defendant, two cases were relied on
 
 to
 
 show that a court of Equity, has no jurisdiction in a case like the present,
 
 Howel
 
 v. Howel, 5 Ired. Eq. 258, is in point — and, in fact, is decisive of this case, being “all fours” with it; (except, that here the object is to obstruct the execution of legal process which makes this the stronger case against the interference of a court of Equity:) An old woman had been in possession of slaves for near twenty years under a legacy to her for life, remainder to her children, which had been assented to by the executor. She alleges that the executor had, by a false allegation, obtained an order of sale by an ex parte application to the county court, and was about to take the slaves from her and sell them. She avers that the injury to her would be irreparable. She is old, and would hardly live long enough to recover damages at law for the trespass; Judges EuffiN and Nash, who were then on the bench, although .aware that in several of our sister .States the courts of equity had assumed jurisdictson to prevent a
 
 sale of slaves
 
 under such circumstances, were clearly of opinion that the jurisdiction could not be rightfully assumed — -that it was in violation of a principle well settled by the English courts, from which we derive our equity jurisprudence, and'so fully recognised by our courts and the legal profession of this State, as not to require elaboration. Accordingly, in delivering the opinion, it was considered sufficient to say the injury was not irreparable; if the plaintiff died, her personal representative would recover the damages caused by a temporary loss in the possession and services of the slaves, and the conclusion is, “ the case .presents the naked question, will a court of equity interfere to prevent a trespass, where the damage is not irreparable? This Court has never claimed or exercised such a jurisdiction.”
 
 Smith
 
 v.
 
 Bank of
 
 Wadesboro, 4 Jones’ Eq. 303, although not in point, affords a negative inference against the jurisdiction; for, had such a jurisdiction been recognised, it would have presénted a plain ground on which to put the decision, whereas, the Court justifies its jurisdiction on the particular circumstance, that the legal title vested in the husband
 
 *101
 

 jure
 
 mariti, and as be was the defendant in the execution, an action at law could not be maintained, and the wife was, for that reason, forced to come into a court of equity for the protection of her separate estate.
 

 "We said above, our case differs from
 
 Howel
 
 v.
 
 Howel
 
 in this: the object here is to obstruct the execution of legal process. That is a consideration entitled to much weight in every court. An execution is said to be “ the end of the law,” and yet, if it can be interrupted, either by an action at law, or a bill in •equity, it will only be the “beginning;” and there will be no •end of the law; for, it is obvious, every debtor who is hard pressed will be tempted to put his property in the hands of his children or other relatives, who may, when an execution "issues, stop the-sale and start a new suit. Accordingly, it is •settled at common law, that a writ of replevin will not lie by A, to take property out of the hands of the sheriff which he has seized under an execution against B. The execution must be brought to an'end, and A must bring some action which •will not interrupt it. So, on the same principle, although the words of our statute in regard to "the action of replevin, are very general, and the purpose is to extend the application of the action, @ur courts felt ’bound to put such a construction on it, as to prevent an 'execution from being interrupted by it, ■although A asserted that the property belonged to him, and not to B, for it was considered more consonant to the administration of justice, that he should suffer the inconvenience of a temporary loss *of the -services of the property, for which he could recover compensation in damages, rather than liaye the •execution stopped;
 
 Carroll
 
 v. Hussey, 9 Ired. 89;
 
 McLeod
 
 v. Oates, Ired. 387. The same principle applies with equal force to a court of Equity; for Equity does not
 
 eonjliet with
 
 the principles of Law, and will only enjoin a party from proceeding under au execution in cases where some equitable ingredient is involved, and where that is the case, even the debt- •or himself is entitled to an injunction. Let it not be said that ;as replevin does not lie, the party is without remedy at law, 'which gives him a stronger claim to the aid of a court of Equi
 
 *102
 
 ty. That is a fallacy. H© is not without remedy at law.— He may bring trespass, trover, or detinue, and if he will wait until the sheriff completes the execution by a sale, he' may then bring replevin. So, there is no pretext for applying tcx Equity, except the temporary loss of the services of the property, which, as we have seen, is not an irreparable injury.— Aftefth-e sale, if the slaves are about to be removed out of the State, Equity will interfere to protect the property during the pendency of the action at law to establish the legal title. In our case, if the bill had been properly framed, and an allegation made that the defendants were acting eollusively, and were making use of the execution as a mere cover, in order to get the slaves out of the possession of the plaintiffs, with an intent to run them out of the country, it may be that a court of Equity would interfere on the- ground that the defendants were perverting the process of the law, whereby to enable them to-inflict an irreparable injury on the plaintiffs; but there is no such allegation in the bill, and speculation in regard to a case presenting that view, is not called for. Besides the want of this allegation, the bill is fatally defective-in. another respect: there i-s no averment that an action at law i-s pending, or is about to-be commenced. An injunction again-st selling under an execution is asked for, and there the matter is to stop ! This is contrary to the course of the Court;
 
 Patterson v.
 
 Miller, 4 Jones’ Eq. 451;
 
 Emmons
 
 v. McKesson, at this term, (ante 92.) It is especialty necessary, in a case like the present; for if the creditors are enjoined from having their execution levied, and the negroes taken into possession by the sheriff, the party in possession will have no cause of action,, and the creditors can institute no proceeding, either at Law, or in Equity, because it is necessary that they should become purchasers at sheriff’s sale, before any title to this specific property will' vest in them, and put it in their power to treat the conveyance of the debtor as fraudulent. To meet this difficulty, Mr.
 
 Mooo^e
 
 suggested: “Let the sheriff levy and take the ne-groes into possession. That will subject him to>an action by the party whose possession- was interfered withy all we ask i&
 
 *103
 
 that the property shall not be sold, but be put back into our possession.” Granted. Then it will be at your election whether to bring an action or not, and so the title, according to the frame of the bill, may never be tried.
 

 • Thus, we may see some of the many difficulties that will grow up out of the jurisdiction which the Court is pressed now to assume and exercise for the first time. And for what? Only to prevent the owner of slaves from being exposed to a naked trespass, whereby he may lose the services for a time, and be put to the expense and trouble of hiring others; for all of which he will recover full damages at law.
 

 If a court of Equity should assume jurisdiction to prevent all torts, the damages resulting from which, are as grievous as in this ease, the field of its labor will become indefinitely enlarged.
 

 This opinion has been more elaborated than would otherwise have been considered necessary, because cases, from several of the other States, where a jurisdiction to prevent torts by a sale of slaves has been assumed, were cited and pressed with much earnestness on the argument.
 

 In South Carolina and Yirginia, the jurisdiction seems,first to have been put “on the peculiar ties of affection by which master and slave are united. There is the faithful kind old nurse, who watched over your infancy, with a tenderness and devotion, little short of that which is felt by a mother, and who .often supplied her place — whose value, estimated by the market price, would be merely nominal; there is your body servant, who has faithfully watched over your sick bed, and who, from experience, knows and anticipates all of your wants, &c.;"
 
 Young
 
 v. Burton, 1 McMullins’ Eq. Rep. (S. C.) 255. But it was found that the degree of affection entertained by a master for his slave, or by a slave for his master, was a subject, for the investigation of which, a court was not adequate, —for the reason, among others, that by a rule of evidence, the declarations of the party, as well of his slave, are not competent. It was then put on a broader ground: “Every argument, in which the jurisdiction of the Courts of Equity,
 
 *104
 
 to compel a performance of a contract in specie, is founded, is supposed to hold with equal force, at least, in favor of
 
 re-taÁnvng
 
 a subject of property which another, having no title thereto, claims to arrest and dispose of by means of an execution, rather than turn the rightful owner around to seek an uncertain and inadequate reparation in damages;” 3 Munford’s Rep. 565. It seems to us, this reasoning is falacious.—
 
 In rega/rd to
 
 cont/racts, every one is bound in conscience to do
 
 specifically
 
 what he agreed to do. So, a court of Equity, in respect to contracts to sell
 
 land
 
 and
 
 slaves,
 
 the two most valuable kinds of property, acts on the general rule to enforce a specific performance, while, in respect to other contracts, unless some peculiar circumstance is alleged, Equity declines to interfere; not on the ground that the party is not entitled to a specific performance, but because it is not necessary for the purpose of doing ample justice; “for if, with the money, an article of the same description can be bought in market, corn, cotton, &c., the remedy at law is adequate;
 
 Kitchen
 
 v.
 
 Herring, 7
 
 Ired. Eq. 190; while, in regard to
 
 torts,
 
 Equity, which is called a court of conscience, has, properly speaking, no concern, and they are left to be dealt with by the courts and juries at common law, except where the
 
 tort
 
 will be attended with irreparable injury, as distinguished from such as may be compensated for in damages.
 

 In Tennessee, the matter is -put on a different footing, and is made to depend on whether a clear title is made out by the proofs! “It is next insisted, for the defendants, that the complainant has not made out a case by his proofs, showing an undoubted and clear .right of property in himself, and, therefore, must be left to litigate at law, and before a jury, his doubtful right. "We think this argument sound, and that, for this reason, the decree of the chancellor must be affirmed;”
 
 Loftin
 
 v.
 
 Espy,
 
 4 Yerger, 93. So, the proofs are taken— cause set for hearing, and heard, and the bill is dismissed on the ground that Equity only has jurisdiction where an “undoubted and clear right of property ” is shown by the plaintiff! !
 

 
 *105
 
 In Alabama and Mississippi, the courts still seem to require, in reference to jurisdiction, as to specific performance and also that to prevent
 
 torts,
 
 proof of some peculiar value or meritorious service or affection towards the slave, notwithstanding the difficulty of proof, and refuse to entertain jurisdiction in favor of negro traders.
 

 Upon the whole, we can see no reason to feel dissatisfied with the doctrine established by our courts: that is, to compel the specific performance of all contracts to sell slaves, and not to interfere to prevent torts, except such as threaten “irreparable injury,” and only to do so then, in aid bf an -action at law, which is.pending, or about to be commenced, so as to take care of the property during the pendency of the suit.
 

 The 'demurrer -must be sustained and the bill dismissed with costs.
 

 The motion for .judgment on the injunction bond is not allowed. The defendants must take their remedy by action at law for a breach of the bond. This case -differs from
 
 Emmons
 
 v. McKesson, decided -at this term. There, the injunction commands “a stay of the-execution.” Here it only enjoins the defendants from having the slaves sold under it; leaving them, however, -at -full liberty to take the benefit of the execution, by having it levied on any other property the debtor may own.
 

 Per Cueiam, Demurrer sustained.